In Re: The Petition of James E. Ramsey and Kathryn H. Ramsey, His Wife, Tenants by the Entireties, for the Appointment of Viewers To Ascertain Damages to Their Land in Unity Township, Westmoreland County, Pennsylvania, by Reason of the Use of and Location of the Glide Path and Landing Approach of the Westmoreland County Airport Authority Runway. James E. Ramsey and Kathryn H. Ramsey, his wife, Appellants.

Argued May 2, 1977, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*William J. Ober,* with him *Scales and Shaw,* for appellants.

*Robert P. Lightcap,* with him *Charles C. Mason, Jr.* and *Lightcap, McDonald & Moore,* for appellee.

Opinion by President Judge Bowman, July 20, 1977:

This "de facto" condemnation appeal is from an order of the Court of Common Pleas of Westmoreland County dismissing a petition for appointment of viewers filed by James and Kathryn Ramsey (appellants). Appellants have averred, *inter alia,* that they are fee simple owners of a lot located near the end of an airport runway operated by the Westmoreland County Airport Authority (appellee); that the runway established a glide path and landing approach passing directly over their property and through their airspace; that radio broadcasting systems used in conjunction with said runway interfere with their radio and television reception; that no declaration of taking has been filed by appellee.; and that by reason of said averments their fee simple interest has been taken or damaged.

Preliminary objections in the nature of a demurrer were overruled by the court below. On a prior appeal to this Court, we remanded, holding that a cause of action in de facto condemnation had been pleaded with regard to overflights, allowing appellants to amend their petition with regard to interference with their radio and television reception, and directing that an evidentiary hearing be conducted "so that a judicial determination might be made of whether the property

owners, based upon the evidence, established a de facto or inverse condemnation of their property as a matter of law.'' *Petition of Ramsey,* 20 Pa. Commonwealth Ct. 207, 212, 342 A.2d 124, 127 (1975).

Following the filing of an amended petition and amended preliminary objections thereto and an evidentiary hearing, the court below made extensive findings of fact and concluded that no cause of action had been stated whereupon the preliminary objections to the amended petition were sustained and the petition was dismissed. This second appeal followed.

A motion to quash this appeal as being one from an interlocutory order must be disposed of before we address ourselves to the merits.

Appellee bases its motion upon a local rule of court which purports to require all exceptions to findings of fact and conclusions of law—which have been filed with the court below by appellants—to be reviewed by the court below en banc. Appellee also cites several cases requiring compete exhaustion of remedies afforded by local rules before an appeal will lie.[1] The motion is without merit.

Section 303 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-303, establishes the Code as the exclusive procedure to be followed in all condemnation cases with exceptions not here applicable.[2] This is no less true of de facto condemnations. *See* Section 502(e) of the Code, 26 P.S. §1-502(e). Local rules of court and

---

[1] *Lafayette Radio Electroncis Corp. of Monroeville v. Jonnel Enterprises, Inc.,* 435 Pa. 49, 255 A.2d 533 (1969) ; *McKay v. North Huntingdon Township Board of Adjustment,* 2 Pa. Commonwealth Ct. 609, 279 A.2d 376 (1971) ; *Cameron v. Board of Adjustment of the City of Greensburg,* 1 Pa. Commonwealth Ct. 210, 274 A.2d 258 (1971).

[2] Section 901 of the Code, 26 P.S. §1-901.

cases not arising under the Code[3] are, therefore, not controlling here.

This issue is, instead, controlled by prior decisions of our Supreme Court and of this Court which hold that the dismissal of preliminary objections to a petition for the appointment of viewers, where there has been no declaration of taking filed, is an appealable order. This matter was fully discussed and resolved in *Faranda Appeal*, 420 Pa. 295, 216 A.2d 769 (1966), *Rawls v. Central Bucks Joint School Building Authority*, 8 Pa. Commonwealth Ct. 491, 303 A.2d 863 (1973), and *Jacobs v. Nether Providence Township*, 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972). Repetition is unwarranted. We can only reiterate that a condemnation proceeding, de facto or otherwise, encompasses two distinct proceedings. The first goes to the propriety and validity of the taking, including whether a taking has been effected. The second goes to damages. A final decision in either is appealable. *Valley Forge Golf Club v. Upper Merion Township*, 422 Pa. 227, 221 A.2d 292 (1966); *see also Rawls, supra.*

In ruling upon the merits of an appeal from an order of a court of common pleas sustaining preliminary objections in a proceeding under the Code, this Court's scope of review is limited to determining whether there is competent evidence in the record to support the findings made and to whether an error of law was committed. *Breinig v. Hatfield Township*, 23 Pa. Commonwealth Ct. 394, 352 A.2d 230 (1976); *Patterson v. County of Allegheny*, 15 Pa. Commonwealth Ct. 228, 325 A.2d 484 (1974); *Penn Iron Works*,

---

3 *Lafayette Radio, supra,* was an equity action governed by the Rules of Civil Procedure. *McKay, supra*, and *Cameron, supra*, were governed by the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10101 et seq.

*Inc. v. Department of Transportation,* 13 Pa. Commonwealth Ct. 532, 320 A.2d 846 (1974); *Blank v. Columbia Gas of Pennsylvania, Inc.,* 11 Pa. Commonwealth Ct. 304, 314 A.2d 880 (1974).

The crucial facts as found by the court below are as follows. Appellants' property is located 3,228.26 feet from the end of the runway in question and 148.21 feet from the projected centerline of the runway and glide path.[4] Planes following the glide path do not pass directly over appellants' property, but when passing by it along the glide path, do so at heights ranging between 260.34 feet and 263.38 feet from appellants' roof. Appellants' complaints center primarily upon particular types of jet aircraft, which from 1973-75 averaged 1005 landings or takeoffs per year or less than three per day, with a 1975 average of approximately five per day on the runway in question. These jets are of the small private variety. Regularly scheduled commercial jets do not use the airport and may do so only with special permission, which is so infrequently granted as to be of no consequence. An average of only four to five propeller-driven planes possessing more than one engine land each day between the hours of 10:00 p.m. and 7:00 a.m. No evidence was introduced to support appellants' contention that the interference with their radio and television reception was caused by airport operations.

There is more than substantial evidence in the record to support these findings and every other finding of fact made by the court below and they stand

---

[4] Planes straying from the established glide path may pass directly over appellants' property and may do so at substantially lower heights. For that, an action would lie in trespass for negligence, not eminent domain. *See Department of Transportation v. Castillo,* 14 Pa. Commonwealth Ct. 22, 321 A.2d 394 (1974); *see* note 5 *infra.*

unchallenged in these proceedings. Appellants instead challenge the conclusion of law of the court below that "[j]udicial relief for a de facto taking is an extraordinary remedy, and the Court cannot find that a de facto taking has occurred unless there is clear and formidable evidence that a taking, injury or destruction of private property has occurred." Appellants also argue that *Griggs v. County of Allegheny*, 369 U.S. 84 (1962), *rev'g* 402 Pa. 411, 168 A.2d 123 (1961), requires as a matter of law a finding that their property has been taken. These are the only questions before us in this appeal.

On the first point, we can find no authority to support the conclusion of law of the court below requiring "clear and formidable evidence" to support a cause of action of de facto taking.

While it is certainly true that appellants bore the burden of proof below, *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974), they had to prove their case only by a "fair preponderance of the credible testimony . . . ." *Lizza v. Uniontown City*, 345 Pa. 363, 365, 28 A.2d 916, 918 (1942).[5]

We must nevertheless affirm as appellants have failed to prove an interference with the beneficial use and enjoyment of their property of such a magnitude as to make out a constitutional taking under the holdings of *Griggs v. County of Allegheny, supra,* and *United States v. Causby,* 328 U.S. 256 (1946). These cases, while certainly not establishing a minimum for the amount of interference necessary to constitute a taking, are instructive.

---

[5] No recovery under the Code is allowed in any event for actions properly lying in trespass for negligence. *E.g., Condemnation of 2719, 2721 and 2711 E. Berkshire St.,* 20 Pa. Commonwealth Ct. 601, 343 A.2d 67 (1975) ; *see* note 4 *supra.*

In *Causby,* the landowner whose property was held to have been taken because of airport traffic, was exposed to frequent overflights of large numbers of a variety of military aircraft flying in close formation. These flights passed directly over the property at heights of less than seventy feet from the residence and barn and a mere eighteen feet from the top of the highest tree. The distance from the property to the end of the runway was 2,220 feet and the landowner's chicken farming enterprise was destroyed because of the noise. What was said then is no less applicable now.

> The airplane is part of the modern environment of life, and the inconveniences which it causes are normally not compensable under the Fifth Amendment. The airspace, apart from the immediate reaches above the land, is part of the public domain. We need not determine at this time what those precise limits are. Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land.

328 U.S. at 266.

In *Griggs,* the landowner's property was 3,250 feet from the end of the runway but from the bottom of the glide path to the chimney was a mere 11.36 feet. ''Regular and almost continuous daily flights, often several minutes apart'' passed directly over the property held to have been taken. 369 U.S. at 87, *quoting* 402 Pa. at 422, 168 A.2d at 128.

Both *Causby* and *Griggs* represent intrusions upon the use and enjoyment of property that in magnitude and impact dwarf that suffered by appellants. Wherever we may ultimately draw the ''precise limit'' spoken of in *Causby,* it will not be drawn within the

190

factual matrix of this case. *See Elias v. Department of Transportation,* 25 Pa. Commonwealth Ct. 605, 608, 362 A.2d 459, 461 (1976).

ORDER

Now, July 20, 1977, the order of the court below is hereby affirmed.